IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5:10-HC-2009-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DANIEL H. KING, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for a determination of whether respondent Daniel H. King ("respondent") should be committed as a sexually dangerous person pursuant to 18 U.S.C. § 4248 ("§ 4248"). Pursuant to 28 U.S.C. § 636(b)(1)(B), an evidentiary hearing was held before United States Magistrate Judge James E. Gates, who entered a memorandum and recommendation (DE # 94) ("M&R") wherein he recommends that the court commit respondent as a sexually dangerous person. Respondent filed objections to the M&R. Petitioner has responded to the objections and provided supplemental authority. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court finds that respondent is a sexually dangerous person and orders him committed to the custody of the Attorney General, pursuant to § 4248.

## BACKGROUND

The procedure for commitment under § 4248 was enacted as part of the Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (hereinafter "Adam Walsh Act"). The statute authorizes the government to certify for commitment individuals within the custody of the Bureau of Prisons ("BOP"). 18 U.S.C. § 4248(a). Such certification automatically stays the person's release from custody, pending completion of the § 4248

proceedings, despite the expiration of the incarcerative portion of the person's criminal sentence. Id.

The government initiated this action by filing its certification of respondent as a sexually dangerous person on January 19, 2010. At the time, respondent was serving a term of 12 to 36 years of imprisonment in the BOP following his conviction for Armed Kidnapping in the Superior Court of the District of Columbia. His projected date for release from criminal confinement was January 20, 2010, but the filing of the certification stayed his release.

## DISCUSSION

A.  Standard of Review

The court designated the magistrate judge to conduct an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the commitment petition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error" and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

To obtain a commitment order pursuant to § 4248, the government must prove by clear and convincing evidence that the person

2

(1) "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5);

(2) currently "suffers from a serious mental illness, abnormality, or disorder"; and

(3) as a result of the illness, abnormality or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(6). See United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012).

"[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Hall, 664 F.3d at 461 (quoting Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) and citing Addington v. Texas, 441 U.S. 418, 423–24 (1979)).

B.  Adoption of the Magistrate Judge's Unchallenged Findings

With the exception of the findings related to respondent's self-reports as discussed below, respondent does not object to the magistrate judge's findings of historical fact (M&R, § III, pp. 6-16). The court hereby adopts those findings as if fully set forth herein. The court also adopts the unchallenged findings of the magistrate judge that respondent suffers from opiate and alcohol abuse, antisocial personality disorder, and exhibitionism (M&R, § VI.D, pp. 59-60).

C.  Respondent's Objections to the M&R

1.  Referral to Magistrate Judge for Evidentiary Hearing

Respondent first objects to the court's referral of this case to a magistrate judge for the evidentiary hearing. For the reasons stated in the court's order (DE # 62) denying respondent's motion for reconsideration of the referral, the court overrules this objection. The court denies

3

respondent's requests, repeated throughout respondent's objections to the M&R, for a full evidentiary hearing before the undersigned.

2. Credibility of Respondent's Self-Reports

Respondent next objects to the magistrate judge's finding that respondent's self-reports regarding his impulse to engage in nonconsensual sexual encounters are credible. The court has reviewed the credibility of the statements and adopts the reasoning of the magistrate judge that the self-reports are credible and respondent's recantations during the hearing are not credible. In sum, the multiplicity of the statements made continually over the course of more than three decades, their consistency with each other, the detail with which he describes his impulses and the strategies he uses to suppress them, and the undisputed behavior that corroborates the statements far outweigh respondent's explanations for purportedly fabricating the statements and the evidence that respondent has lied habitually throughout his life for personal gain.

3. Weight given to expert testimony

Third, respondent objects to the magistrate judge failing to give greater weight to the opinion of the experts who testified for the government, Dr. Dawn Graney and Dr. Gary Zinik, over the opinion of the respondent-selected examiner Dr. Fabian Saleh. The court has conducted a de novo review of the reports and testimony provided by each expert and considered the appropriate weight to be given. All three experts were qualified to give their opinions. The court has weighed and considered the opinions in light of each expert's qualifications. Respondent seems to argue that the court should assess the educational background and level of experience of each one, and simply adopt in toto the opinion of the "most qualified" among them. The court declines to do so.

4. Finding that Opiate and Alcohol Abuse is a Serious Mental Illness, Abnormality or Disorder

4

Fourth, respondent objects to the magistrate judge's conclusion that opiate and alcohol abuse is a serious mental illness, abnormality, or disorder[1] for purposes of commitment under § 4248. Having conducted a de novo review, the court finds by clear and convincing evidence that respondent's particular expression of opiate and alcohol abuse is a serious mental disorder. As did the magistrate judge, the court credits the reasons advanced by Dr. Graney that respondent's opiate and alcohol abuse is a serious mental disorder, given the substantial negative impact it has had on respondent's life.

     5.     Finding that Antisocial Personality Disorder is a Serious Mental Illness, Abnormality or Disorder

Fifth, respondent objects to the magistrate judge's conclusion that antisocial personality disorder is a serious mental illness, abnormality, or disorder for purposes of commitment under § 4248. Having conducted a de novo review, the court finds by clear and convincing evidence that respondent's particular expression of antisocial personality disorder as a longstanding pattern of manipulation of others and disregard for their rights establishes it as a serious mental disorder.

     6.     Finding that Respondent Suffers from a Paraphilic Disorder Characterized By His Impulse to Engage in Nonconsensual Sexual Encounters

Finally, respondent objects to the magistrate judge's conclusion that respondent suffers from a paraphilic disorder characterized by arousal to nonconsensual sexual encounters. After a careful review of the entire record, the court finds that respondent does suffer from such a disorder, and that it is a serious mental disorder. The magistrate judge determined that the government failed to prove that paraphilia NOS, nonconsent is a disorder that exists among the population generally. Although

---

[1] The M&R occasionally uses the term "defect" in place of "disorder" in describing the second element required for commitment. Each of the conditions the magistrate judge found respondent suffers from are in fact "disorders" as contemplated by the statute. The

5

extensively debated among the psychological community, it has not been adopted for inclusion in the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM), a near-universally accepted resource for the classification of psychological conditions. However, "the reach of section 4248 is not limited to the specific conditions listed in the DSM." <u>United States v. Carta</u>, 592 F.3d 34, 41-42 (1st Cir. 2010). The Fourth Edition, text revision of the DSM (DSM-IV-TR), the current version of the reference, defines "paraphilia" as "recurrent, intense sexually arousing fantasies, urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or <u>other nonconsenting persons</u> that occur over a period of at least 6 months." DSM-IV-TR 566 (emphasis added). The fact that the definition of "paraphilia" itself contemplates nonconsenting persons gives credence to the validity of paraphilia NOS, nonconsent as a diagnosis. The court finds that although paraphilia NOS, nonconsent is not specifically included in the DSM, the term could be used to describe a person with abnormal sexual arousal toward nonconsenting sexual encounters, such as respondent. Furthermore, such a condition meets the statutory definition of a serious mental illness, abnormality, or disorder for purposes of § 4248 commitment. Whether it be termed paraphilia NOS, nonconsent or not, the court adopts the magistrate judge's reasoning and conclusion that respondent suffers from a paraphilic disorder characterized by arousal to nonconsensual sexual encounters as based on his extensive self-reports of the motivations behind his known crimes and his persistent urges and fantasies.

D.  Analysis of Respondent's Sexual Dangerousness

Upon careful review of the entire record, and for the reasons that follow, the court concludes that respondent is a sexually dangerous person within the meaning of 18 U.S.C. § 4248.

1.  Factual Summary

6

The court adopts the factual findings of the magistrate judge as noted above, and provides the following summary drawn therefrom. Respondent is 54 years old. He was adopted at the age of 14 months. He suffered from severe hearing loss and attended a school for the deaf until the age of eight. His adoptive parents sought professional help for respondent's behavioral problems as early as age 9. The adoptive parents reported he was a very disruptive child beginning at age 12 and that he could not control his behavior. Out of fear of respondent, his adoptive mother often locked him out of the house, or she would wait elsewhere for her husband to return home. Respondent began exposing his penis to other children at age 12. He began drinking alcohol at age 13, and he abused alcohol and other drugs throughout his life, including while incarcerated. He has presented with a history of alcohol-induced blackouts.

Respondent received mental health counseling from age 13 to 16 in relation to exposures and obscene phone calls. Respondent dropped out of school in the 11th grade, but he later obtained a General Equivalency Diploma and has earned some college credits.

In 1974, when respondent was 15, he was arrested and pled guilty as a juvenile to two counts of indecent exposure for exposing his penis to two girls (ages seven and eight) he approached while they were fishing in a creek. He asked them to feel his penis, but there is no evidence that respondent touched the girls or that the girls touched him. He received one year of juvenile probation.

He was arrested and convicted in 1975 at age 17 for the offense of seize, transport, and detain with intent to defile a female. In this incident, respondent approached a female stranger, age 19, walking on a path adjacent to a street following a high school football game. After some initial conversation, respondent grabbed the female, placed a knife at her neck, forced her into the rear seat

7

of a car being driven by another male, and they drove away. The driver advised respondent to release the female, but respondent told him to shut up and keep driving. Respondent held the female around the throat and placed his hand under her blouse and fondled her breasts. He also forced the female to touch his penis. At the driver's insistence, respondent finally released the victim. Upon questioning by the police, respondent admitted to forcing the female into the car and fondling her breasts. On 27 October 1975, respondent pled guilty to this offense and was given indeterminate probation not to last past his 21st birthday. He also received court-ordered inpatient treatment, but was expelled from the program for allegedly engaging in inappropriate sexual contact with a female patient.

He was then admitted to the Henry Phipps Psychiatric Clinic at John Hopkins Hospital ("Phipps Clinic") for mental health treatment, where he received a diagnosis of exhibitionism and delinquent reaction of adolescence. In 1977, he attended a few therapy sessions with a psychiatrist at Fairfax County Hospital, but the treatment was discontinued when the doctor concluded that it was not effective because respondent was attending the sessions only because they had been ordered by the court.

In 1978, when respondent was 19, he pled guilty to one count of attempting to abduct a woman. He has reported that he had attempted to abduct two women on separate occasions on the same day. The charges involving one of the women were dismissed. He received a sentence of 10 years with all but 5 years suspended, followed by 5 years probation after completing his incarceration. Respondent was released from prison in December 1980.

8

Respondent has married and divorced twice. He met his first wife in 1981 and married her in 1982. During this marriage, respondent was arrested in 1983, and he has had no contact with his first wife since the arrest. Their marriage produced no children and ended in divorce in 1986.

The facts of the 1983 arrest noted above are as follows. When respondent was 25 years old and still on probation for his 1978 offense, he was charged in the District of Columbia with simple assault, two counts of carrying a dangerous weapon–felony, and assault with intent to kidnap while armed. In this incident, respondent approached a stranger female, engaged in some conversation to get her to walk him to his car, and when she declined, he threatened to kill her if she screamed. He then attempted to force her into her own car. She kicked respondent and screamed, and respondent fled the scene. Based on her description, police arrested respondent and recovered a pair of handcuffs from his jacket. In his vehicle were an air pistol, an axe handle with nails on one end, and lengths of rope on the floorboard with one rope hooked through a seat belt anchor. Arising from this incident, respondent pled guilty in 1985 to carrying a dangerous weapon-felony and simple assault. He was sentenced to two to eight years on the weapons count and a consecutive one-year term on the simple assault count. While incarcerated in 1986, he received a brief psychological evaluation and participated in therapy. He was paroled in 1987.

At the time of his parole, respondent received an outpatient mental health evaluation at the Alexandria Mental Health center, receiving diagnoses of intermittent explosive disorder and alcohol dependence, in remission.

Respondent married his second wife in 1987. They were expecting their first child when respondent was arrested for his most recent offense in 1988. They divorced in 1988.

9

The facts of the 1988 arrest, which took place during respondent's second marriage are as follows. When respondent was 29, and while on parole for the 1983 offense, respondent approached and grabbed a female stranger around the neck, threatened her with a knife and instructed her not to scream, led her down the street, asked her if she had any money, and attempted to force her into his vehicle. A pedestrian came to her aid, diverting respondent's attention from the female, allowing her to break free and flee the scene. Respondent pled guilty to armed kidnapping and was sentenced to 12 to 36 years for this offense. He has remained in custody since that time. During this time, he has sought and received psychological and psychiatric treatment for issues such as anxiety, family conflict, anger, and sexual issues. He also has an extensive history of malingering psychiatric illnesses for personal gain.

In 1993, during a therapy session with a female BOP psychologist, respondent asked the psychologist to touch his penis. He was sanctioned for this conduct. Respondent has received other institutional sanctions including threatening staff, possessing a weapon, and numerous instances of possession of alcohol and contraband substances.

On the morning of the second day of respondent's commitment hearing in 2012, respondent exposed himself to four female inmates at the Wake County Jail, purposely masturbating in a manner so the female inmates could see him from their nearby cell.

    2.    Elements Required for Commitment

        a.    Previously engaging or attempting to engage in sexually violent conduct or child molestation

Respondent does not dispute that he has committed sexually violent conduct or child molestation. As the magistrate judge found, respondent's conviction in 1975 for abduction with the intent to defile clearly qualifies as sexually violent conduct. Respondent abducted a woman at knife

point, fondled her breasts, and forced her to touch his exposed penis. The court agrees with the magistrate judge that this offense, alone, satisfies the first element for commitment.

The magistrate judge declined to decide whether respondent's juvenile adjudication in 1974 for exposing himself to two girls (ages seven and eight) when he was 15 years old also qualifies as either sexually violent conduct or child molestation. Respondent exposed his penis and asked the girls if they wanted to feel it. Because respondent asked the minor victims to touch his exposed penis, the court finds, by clear and convincing evidence, that this conduct constitutes at least attempted child molestation. Thus, even standing alone, it would establish the first element required for commitment.

Furthermore, the court adopts the reasoning of the magistrate judge that respondent's attempted abductions in 1978, 1983, and 1988 also satisfy the first element required for commitment as each constitutes attempted sexually violent conduct based on respondent's statements that the attempted abductions were sexually motivated. Accordingly, there are at least five separate incidents of prior conduct establishing the first element for commitment.

        b.       Serious mental illness, abnormality, or disorder

As to the second element for commitment, the court finds, by clear and convincing evidence, that respondent suffers from a number of serious mental illnesses, abnormalities, or disorders, namely, a paraphilic disorder characterized by arousal to nonconsent, exhibitionism, opiate and alcohol abuse, and antisocial personality disorder. Respondent does not object to the magistrate judge's findings that respondent suffers from antisocial personality disorder, exhibitionism, and opiate and alcohol abuse. He does, however, object to the magistrate judge's findings that antisocial personality disorder and opiate and alcohol abuse are serious mental illnesses, abnormalities, or

disorders. As noted above, the court finds that they are in fact serious conditions that qualify under the second required element for commitment.

        c.    Serious difficulty refraining from sexually violent conduct or child molestation if released

As to the third element, the court finds by clear and convincing evidence, that as a result of respondent's paraphilic disorder characterized by arousal to nonconsent and his exhibitionism, which are exacerbated by his antisocial personality disorder, he will have serious difficulty in refraining from sexually violent conduct or child molestation if released.

The Fourth Circuit has noted,

> Determining whether an inmate will have serious difficulty refraining from reoffending requires the court to "evaluate[ ] the individual's present mental condition and the likely prospective effect of that mental condition on his volitional control." . . . This forward looking inquiry, which attempts to predict the inmate's "ability to refrain from acting in accord with his deviant sexual interests," . . . requires consideration of the grip strength of the mental illness on the inmate – the extent to which the inmate is controlled by the illness.

United States v. Wooden, — F.3d —, No. 11-7226, 2012 WL 3866541, at *18 (4th Cir. Sept. 6, 2012) (quoting United States v. Francis, 686 F.3d 265, 275 (4th Cir. 2012)).

In determining the grip strength of respondent's mental conditions, the court relies heavily on respondent's self-reports that he has strong impulses to engage in nonconsensual sexual encounters. The court does not agree with Dr. Saleh's all-or-nothing approach, whereby he discounts all of respondent's self-reports because he has an extensive history of lying otherwise. As noted above, the court specifically adopts the magistrate judge's reasoning regarding the credibility of respondent's self-reports. The self-reports about uncontrollable urges and arousal toward nonconsent are corroborated by respondent's conduct, specifically, his repeated pattern of

12

abductions and attempted abductions of women involving forcing them into a vehicle. In the one known instance where he was able to force a victim into a vehicle, he committed a violent sexual assault.

Respondent's conduct at the Wake County Jail in the midst of his commitment hearing is also strong evidence of the present strength of respondent's serious difficulty in refraining from sexual misconduct. The court credits the testimony of Dr. Zinik and Dr. Graney that respondent's paraphilia related to nonconsent and his exhibitionism are intertwined and combine into a single disorder. Therefore, because respondent could not refrain from exhibitionism even on one of the days the court was conducting a hearing on his sexual dangerousness, the court is convinced he will have serious difficulty in refraining from acting on his impulses toward violent and coercive sexual encounters, such as the abduction of women in order to assault them sexually, if he were released.

Although the court does not find that respondent's opiate and alcohol abuse contributes to his volitional impairment, the fact that respondent admitted to using illicit substances to help suppress his strong sexual urges constitutes powerful evidence of the intensity of the mental conditions that do impair his volition.

Respondent's antisocial personality disorder serves to even further exacerbate his sexual dangerousness. His persistent pattern of manipulative conduct and disregard for the rights of others lessens his ability to stop himself from acting on his very intense and violent sexual urges and fantasies.

The court has considered the actuarial assessments conducted by the experts, but gives them little weight compared to respondent's individual history of repeatedly offending, even while on supervision and after receiving prior sanctions, and his overwhelming and persistent admissions of

13

difficulty controlling his sexual urges. In sum, the court finds by clear and convincing evidence that as a result of respondent's paraphilic disorder, exhibitionism, and antisocial personality disorder, each of which separately – and all of which collectively – constitute a serious mental illness, abnormality, or disorder, respondent will have serious difficulty refraining from sexually violent conduct if released.

Although the court is ordering respondent committed, this determination does not necessarily mean that respondent will be confined for the rest of his life. The statute provides for periodic review of the propriety of commitment. An annual report on respondent's condition will be submitted to the court, pursuant to 18 U.S.C. § 4247(e)(1)(B). Furthermore, the director of the facility where respondent will be housed may prompt the court to release respondent by certifying to the court "that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment[.]" 18 U.S.C. § 4248(e). Finally, after the expiration of 180 days following each determination by the court regarding respondent's commitment, respondent may move for a hearing to determine whether he should be discharged. 18 U.S.C. § 4247(h). Should respondent participate and complete significant treatment while committed, the court will consider his discharge in proper course.

## CONCLUSION

For all of the foregoing reasons, the court hereby FINDS that respondent is a sexually dangerous person within the meaning of 18 U.S.C. § 4247(a)(5) and (6).

IT IS THEREFORE ORDERED that Respondent is hereby COMMITTED to the custody of the United States Attorney General as a sexually dangerous person pursuant to 18 U.S.C. § 4248(d).

SO ORDERED, this the 24th day of September, 2012.

_____
LOUISE W. FLANAGAN
United States District Court Judge